BRUCE L. SIMON (Bar No. 96241)
  bsimon@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
ALEXANDER R. SAFYAN (Bar No. 277856)
  asafyan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

AIMEE H. WAGSTAFF (Bar No. 278480)
  aimee.wagstaff@andruswagstaff.com
**ANDRUS WAGSTAFF, PC**
7171 West Alaska Drive
Lakewood, Colorado 80226
Telephone:    (720) 255-7623

Attorneys for Plaintiff Joseph A. Del Braccio,
individually and on behalf of all others similarly
situated

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH A. DEL BRACCIO, individually and on behalf of all others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| LUMBER LIQUIDATORS, INC., a Delaware corporation, | |
| Defendant. | |

862520.3

Plaintiff Joseph A. Del Braccio ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), alleges the following against Defendant Lumber Liquidators, Inc. ("Lumber Liquidators"), based upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters, including, *inter alia*, his counsel's investigation:

### INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of the below-defined Class to redress a dangerous and systematic fraud perpetrated against the people of the State of California by Lumber Liquidators through the sale and distribution of its composite laminate wood flooring products ("laminate flooring") manufactured in China.

2.      Lumber Liquidators contracts with foreign Chinese manufacturing mills to produce laminate flooring for sale in its retail stores in California and throughout the United States.  This agreement allows it to "negotiate directly with the mills and eliminate the middleman."[1]

3.      Lumber Liquidators supervises and controls the manufacturing of the laminate flooring.  Additionally, it advertises, packages, sells, and/or distributes the laminate flooring to consumers in California.

4.      Contrary to Lumber Liquidators' representations, its laminate flooring manufactured in China fails to comply with applicable legal standards regarding the amount of formaldehyde permitted in products sold in California.  Indeed, Lumber Liquidators' laminate flooring manufactured in China and sold in California emits formaldehyde at levels significantly in excess of permissible standards and at levels known to pose serious health risks to consumers.

5.      According to the U.S. Environmental Protection Agency ("EPA"), exposure to formaldehyde has been linked to eye, nose, and throat irritation; coughing, wheezing, chest pains, and bronchitis; respiratory issues; corrosion of the gastrointestinal tract and inflammation and ulceration of the mouth, esophagus, and stomach; skin irritation and allergic contact dermatitis;

---

[1] www.lumberliquidators.com/11/home (page unavailable as of March 9, 2015).

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

862520.3

CLASS ACTION COMPLAINT

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  menstrual disorders; and lung and nasopharyngeal cancer.[2]

2  6.  These exposures are particularly dangerous to children, a demographic targeted in

3  Lumber Liquidators' advertisements and television commercials, and affected through Lumber

4  Liquidators' contribution of flooring to organizations such as Habitat for Humanity, Ronald

5  McDonald House Charities, schools, and community centers.[3]

6  7.  According to the California Environmental Protection Agency's Air Resources

7  Board ("CARB"), formaldehyde has been classified as a <u>known human carcinogen</u> by the

8  International Agency for Research on Cancer since 2004 and by the National Toxicology Program

9  within the U.S. Department of Health and Human Services since 2011.[4]

10  8.  CARB has evaluated formaldehyde exposure from composite wood products and

11  established regulations to reduce formaldehyde emissions from such products. These emission

12  standards have been codified in Title 17 of the California Code of Regulations and apply to any

13  business selling formaldehyde-containing products in California.[5]

14  9.  On July 7, 2010, President Obama signed the Formaldehyde Standards for

15  Composite Wood Products Act into law. This legislation establishes federal limits for

16  formaldehyde emissions from composite wood products, which mirror the standards previously

17  established by CARB for products sold, offered for sale, supplied, used, or manufactured for sale

18  in California.

19  10.  Chinese-manufactured laminate flooring sold by Lumber Liquidators in California

20  is labeled "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde" or some similar iteration

21  that indicates it complies with CARB standards. However, as shown below, this representation is

22  false because the Chinese-manufactured laminate flooring sold by Lumber Liquidators in

_____

24  [2] http://www.epa.gov/airtoxics/hlthef/formalde.html.

25  [3] *See generally* Lay It Forward With Lumber Liquidators donation stories,
   http://layitforward.lumberliquidators.com/donation-stories/ (last visited March 11, 2015).

26  [4] http://www.arb.ca.gov/research/indoor/formaldehyde.htm (last visited March 11, 2015).

27  [5] http://www.arb.ca.gov/toxics/compwood/compwood.htm.

28

California is not CARB complaint and contains excess levels of formaldehyde that pose serious health risks to consumers.

11.     Lumber Liquidators claims in its Flooring Trends 2015 Spring Edition catalog: "We care too much to sell anything but the **highest quality flooring**" and "**We know everything about flooring**."[6]  (Emphasis in original).

12.     A recent investor newsletter for Lumber Liquidators stressed its belief that Lumber Liquidators "has the highest standards in the industry" and that it "believe[s] in the importance of being an environmentally conscientious company[.]"[7]

13.     Despite Lumber Liquidators' supposed dedication to the "highest quality flooring" and "being an environmentally conscientious company," recent evidence shows that Lumber Liquidators' Chinese-manufactured laminate flooring does not comply with the necessary legal standards and is unreasonably dangerous to California consumers.

## PARTIES

14.     Plaintiff, Joseph A. Del Braccio, is a citizen and resident of the State of California. In or about January 2015, Plaintiff purchased Kensington Manor by Dream Home 12mm Golden Teak laminate flooring from a Lumber Liquidators retail store in Livermore, California. Plaintiff's laminate flooring was manufactured in China and labeled "CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde."  Plaintiff relied on Lumber Liquidators' misrepresentations that its laminate flooring was "high quality" and reasonably believed that it complied with applicable legal standards, including those set by CARB.

15.     Defendant, Lumber Liquidators, Inc., is a Delaware corporation with its principal place of business located at 3000 John Deere Road, Toano, Virginia 23168.  Lumber Liquidators is licensed and does business in the State of California and sells goods within the meaning of

---

[6] *See* http://www.lumberliquidators.com/ll/flooring/ecatalog then follow the "View eCatalog" hyperlink beneath "The Best Deals Anywhere on Great Hardwood Floors" (last visited March 9, 2015).

[7] Second Quarter 2014 Investors Newsletter, http://investors.lumberliquidators.com/download/Second+Quarter+2014+Newsletter.pdf.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  California Civil Code § 1761.

2  <u>**JURISDICTION AND VENUE**</u>

3  16.    This Court has jurisdiction over the subject matter of this action pursuant to the

4  Class Action Fairness Act, in that (i) there is complete diversity (Plaintiff is a citizen of California

5  and Defendant is incorporated in Delaware and otherwise maintains its principal place of business

6  in Virginia, (ii) the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs,

7  and (iii) there are 100 or more members of the proposed Class.

8  17.    Defendant Lumber Liquidators conducts substantial business in California,

9  including the sale and distribution of laminate flooring, and has sufficient contacts with California

10  or otherwise intentionally avails itself of the laws and markets of California, so as to sustain this

11  Court's jurisdiction over Lumber Liquidators.

12  18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial

13  part of the events or omissions giving rise to this claim occurred in this District, a substantial part

14  of the property that is the subject of this action is situated in this District, and Lumber Liquidators

15  is subject to personal jurisdiction in this District.

16  19.    As a result of Lumber Liquidators' marketing, distributing, promoting, and selling

17  laminate flooring to consumers throughout California, Lumber Liquidators has benefitted from the

18  laws of California and profited from California commerce.

19  20.    Lumber Liquidators has conducted systematic and continuous business activities in

20  and throughout the State of California by selling and distributing laminate flooring throughout the

21  State of California, and otherwise intentionally availed itself of markets in the state of California

22  through the promotion and marketing of its business, including the sale of the products at issue in

23  this litigation.

24  <u>**FACTUAL ALLEGATIONS**</u>

25  A.    <u>**Formaldehyde and CARB Standards**</u>

26  21.    Laminate flooring is typically made of pressed composite wood, held together with

27  glue or resin and covered with a decorative surface.

28  22.    Formaldehyde is a common ingredient found in the glue that holds together the

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

pressed composite wood in laminate flooring.  At low levels, the formaldehyde will usually dissipate during or shortly after installation of the laminate flooring.  However, at high levels, the formaldehyde is released as a gas that emanates from the flooring over time.

23.     It is possible to make laminate flooring without formaldehyde or with low levels of formaldehyde.  But such products may have longer curing times, lower manufacturing throughput, and higher production costs.  Laminate flooring with high formaldehyde is less expensive and dries more quickly than similar flooring with low formaldehyde, allowing the manufacturer to produce laminate flooring at higher volumes in less time and with less cost.

24.     CARB has established formaldehyde emission standards that apply to laminated wood products, including laminate flooring.  *See* Cal Code-Regs., tit. 17, § 93120.2(a).

25.     According to CARB, formaldehyde emission standards were necessary because, at the time of their implementation, "if the California population were exposed to current, average indoor levels of formaldehyde over a lifetime, ARB staff estimate that about 4,000 excess cases of cancer would be expected to develop[.]"[8]  To put this in perspective, California's Safe Drinking Water and Toxic Enforcement Act of 1986 (commonly known as Proposition 65) requires businesses that sell products in California to provide a clear and reasonable warning to consumers if their product causes exposure to a chemical that would be expected to result in **one** excess case of cancer over a 70-year lifetime.[9]

26.     Under CARB regulations, "no person shall sell, supply, offer for sale, or manufacture for sale in California any composite wood product which, at the time of sale or manufacture, does not comply with the emission standards[.]"  Cal Code-Regs., tit. 17, § 93120.2(a).

---

[8] Formaldehyde in the Home, http://www.arb.ca.gov/research/indoor/formaldGL08-04.pdf (last visited March 12, 2015).

[9] California Office of Environmental Health Hazard Assessment, *Proposition 65 in Plain Language*, http://oehha.ca.gov/prop65/background/p65plain.html.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

27.     CARB standards limit the emission of formaldehyde from medium density laminate flooring as of January 1, 2011 to no greater than 0.11 parts per million ("ppm") and from thin medium density laminate flooring as of January 1, 2009 to 0.21 ppm, and as of January 1, 2012 to 0.13 ppm.

**B.     Tests Reveal that Lumber Liquidators' Laminate Flooring Contains Formaldehyde at Levels Well Above Those Permitted by CARB.**

28.     Lumber Liquidators has sold at all relevant times and continues to sell in California laminate flooring from its Chinese manufacturing mills that has been shown to exceed CARB standards.

29.     From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate flooring from several nationwide retail outlets, including Lumber Liquidators.  Of the dozens of products tested, by far the highest formaldehyde levels were found in the laminate flooring sold by Lumber Liquidators that was produced in China. These levels exceeded the acceptable levels for product sales within the State of California.

30.     The news program *60 Minutes* has investigated the production of laminate flooring in Chinese mills for Lumber Liquidators and discovered that employees at the mills openly admitted to falsely labeling Lumber Liquidators' laminate flooring as CARB compliant while using higher levels of formaldehyde to save Lumber Liquidators 10-15% on the price of the laminate flooring.[10]

31.     During an interview with a general manager for one of the mills that manufactures laminate flooring for Lumber Liquidators in China, the general manager stated, "I have to be honest with you.  It's not CARB 2 [compliant]. . . . We can make CARB 2 but it would be very expensive."[11]

32.     When *60 Minutes* had independent laboratories test thirty-one different samples of

---

[10] http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited March 9, 2015).

[11] *Id.*

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

laminate flooring sold by Lumber Liquidators and made in China, **thirty** of the samples were outside of CARB limits, despite being labeled "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde."

33.    Examiners at Benchmark International, an independent testing center, have discovered the following excess levels of formaldehyde in a sample of Lumber Liquidators laminate flooring products, despite those samples being labeled CARB compliant, as described in Table 1:[12]

| Laminate Flooring Tested | Parts Per Million (ppm) | Percentage of Acceptable CARB Limit |
|---|---|---|
| KM Sandy Hills Hickory 12mm | 0.636 ppm | 578% |
| KM Fumed African Ironwood 12mm | 0.454 ppm | 412% |
| KM Glacier Peak Poplar 12mm | 0.312 ppm | 283% |
| KM HS Summer Retreat Teak 12mm | 0.827 ppm | 751% |
| ISP Poplar Forest Oak 12mm | 0.768 ppm | 698% |
| STJ Brazilian Koa 12mm | 0.127 ppm | 115% |
| STJ Vintner's Reserve 12mm | 0.231 ppm | 210% |
| KM Warm Springs Chestnut 12mm | 1.473 ppm | 1339% |
| ISP Mill River Walnut 12mm | 0.228 ppm | 207% |
| KM Warm Springs Chestnut 12mm | 0.126 ppm | 115% |
| KM Golden Teak Lam 12mm | 0.404 ppm | 367% |
| STJ Vintner's Reserve 12mm | 0.206 ppm | 187% |
| ISP Sloane Street Teak 12mm | 0.150 ppm | 136% |
| KM Fumed African Ironwood 12mm | 0.386 ppm | 351% |
| Ispiri American Mission Olive 12mm | 0.178 ppm | 162% |

34.    Examiners at HPVA Laboratories, another independent testing center, have discovered the following excess levels of formaldehyde in a sample of Lumber Liquidators laminate flooring products, despite those samples being labeled CARB compliant, as described in Table 2:[13]

_____

[12] The test results, along with methodologies for determining them, can be found at http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-liquidators/ by following the hyperlink "To see the test results, click here" (last visited March 9, 2015).

[13] The test results, along with methodologies for determining them, can be found at http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-liquidators/ by following the hyperlink "To see the test results, click here" (last visited March 9, 2015).

| Laminate Flooring Tested | Parts Per Million (ppm) | Percentage of Acceptable CARB Limit |
|---|---|---|
| St. James 12mm Chimney Rock Charcoal Vinyl Laminate Flooring | 0.37 ppm | 336% |
| Ispiri 12mm Poplar Forest Oak Vinyl Laminate Flooring | 1.45 ppm | 1318% |
| Kensington 12mm Fumed African Ironwood Vinyl Flooring | 0.53 ppm | 482% |
| Kensington 12mm High Sholes Hickory Vinyl Laminate Flooring | 0.26 ppm | 236% |
| Ispiri 12mm American Mission Olive LAM Vinyl Laminate Flooring | 0.32 ppm | 291% |
| St. James 12mm Nantucket Beech Vinyl Laminate Flooring | 0.20 ppm | 182% |
| Kensington 12mm Tanzanian Wenge Vinyl Laminate Flooring | 0.83 ppm | 755% |
| Ispiri 12mm African Thuya Burlwood Vinyl Laminate Flooring | 0.61 ppm | 555% |
| St. James 12mm Vintner's Reserve Vinyl Laminate Flooring | 0.24 ppm | 218% |
| Kensington 12mm Imperial Teak Vinyl Laminate Flooring | 0.37 ppm | 336% |
| Ispiri 12mm American Mission Olive LAM Vinyl Laminate Flooring | 0.72 ppm | 655% |
| Kensington 12mm Golden Teak Vinyl Laminate Flooring | 0.36 ppm | 327% |
| Ispiri 12mm Mill River Walnut Vinyl Laminate Flooring | 0.47 ppm | 427% |
| St. James 12mm Blacksburg Barn Board Vinyl Laminate Flooring | 0.98 ppm | 891% |
| St. James 12mm Vintner's Reserve Vinyl Laminate Flooring | 0.26 ppm | 236% |

35.     CARB regulations apply to all of the above listed flooring products.

36.     Benchmark International and HPVA Laboratories utilized the Laboratory Standard Operating Procedures for Ambient Air[14] published by CARB to examine the formaldehyde emissions.  Before testing, CARB officials confirmed that the testing method was in accordance with CARB procedures for testing formaldehyde emissions compliance.[15]

37.     Additionally, Benchmark International and HPVA Laboratories performed the California Department of Public Health 01350 test,[16] which measures the concentration of emissions coming off the laminates into the air of a typical home, finding that the emissions coming off the highest-emitting sample qualified as "polluted indoor conditions" under U.S. EPA standards.

38.     Each type of Lumber Liquidators laminate flooring listed in Tables 1 and 2 above

---

[14] More about these testing procedures can be found at http://www.arb.ca.gov/aaqm/sop/summary/summary.htm#LSOP (March 12, 2015).

[15] http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-liquidators/ (last visited March 12, 2015).

[16] More about these testing procedures can be found at http://www.cdph.ca.gov/programs/IAQ/Documents/cdph-iaq_standardmethod_v1_1_2010%20new1110.pdf (March 12, 2015).

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   is manufactured in China using common formula, design, or processes.

2        39.    Each type of Lumber Liquidators laminate flooring listed in Tables 1 and 2 above

3   is labeled "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde" or some similar iteration

4   that indicates it complies with the standards established by CARB.

5        40.    Despite being labeled as CARB compliant, Lumber Liquidators acknowledges it

6   "cannot guarantee that [its suppliers] comply with such laws and regulations or operate in a legal

7   ethical and responsible manner"[17] even though it chooses, unlike its competitors, to negotiate

8   directly with its suppliers rather than rely on middlemen.

9        41.    Though Lumber Liquidators continues to label its laminate flooring as CARB

10   compliant, it has repeatedly been warned that its Chinese-manufactured laminate flooring is in

11   violation of CARB standards, but has ignored these warnings.[18]

12        42.    In June 2013, the investing website Seeking Alpha posted an article describing

13   Lumber Liquidators' laminate flooring as having three and a half times the acceptable CARB

14   limits on formaldehyde.[19]

15        43.    In July 2014, Global Community Monitor, an independent environmental

16   monitoring organization, filed a complaint in California state superior court, alleging, "[w]ithout

17   exception, the Lumber Liquidators products produced in China that Plaintiffs tested emitted

18   formaldehyde at far higher rates than those manufactured in Europe or North America – on

---

[17] Lumber Liquidators Form 10-K for the year ended December 31, 2014, p. 14, http://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=10099135&type=HTML&symbol=LL&companyName=Lumber+Liquidators+Holdings&formType=10-K&dateFiled=2015-02-25.

[18] Global Community Monitor: Lumber Liquidators flooring emits hazardous levels of formaldehyde, http://www.prnewswire.com/news-releases/global-community-monitor-lumber-liquidators-flooring-emits-hazardous-levels-of-formaldehyde-268293812.html (last visited March 12, 2015).

[19] Illegal Products Could Spell Big Trouble At Lumber Liquidators, http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators (last visited March 12, 2015).

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1    average, Chinese products emitted at 350% the rate of European/North American products."[20]

2    44.    Dr. Philip Landrigan, a physician at New York's Mt. Sinai Hospital who

3    specializes in environmental pediatrics, has stated that these levels of formaldehyde are not safe

4    and that these levels of formaldehyde are particularly dangerous for children.[21]

5    **C.    Plaintiff's Experience**

6    45.    In or around January 2015, Plaintiff purchased Kensington Manor by Dream Home

7    12mm Golden Teak laminate flooring from Lumber Liquidators, and had it installed in his home.

8    46.    Plaintiff purchased this laminate flooring from a Lumber Liquidators retail store at

9    6242 Preston Avenue, Livermore, California 94551.

10    47.    The laminate flooring purchased by Plaintiff was packaged and labeled

11    "CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde," as shown below.



21    48.    When purchasing his laminate flooring, Plaintiff relied on Lumber Liquidators'

22    misrepresentations that the laminate flooring was "high quality" and reasonably believed that it

---

24    [20] Global Community Monitor: Lumber Liquidators flooring emits hazardous levels of
25    formaldehyde, http://www.prnewswire.com/news-releases/global-community-monitor-lumber-
      liquidators-flooring-emits-hazardous-levels-of-formaldehyde-268293812.html (last visited March
26    12, 2015).

27    [21] http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-liquidators/ (last
      visited March 12, 2015).

1    complied with applicable legal standards, including those set by CARB.

2        49.    Furthermore, Plaintiff saw and relied on the label on Lumber Liquidators' laminate

3    flooring that it was "CALIFORNIA 93120 PHASE 2 Complaint for Formaldehyde" before having

4    the laminate flooring installed in his home.

5        50.    At the time of Plaintiff's purchase, Lumber Liquidators' employees and

6    representatives failed to inform Plaintiff that the flooring he purchased contained formaldehyde

7    and the dangers inherent in formaldehyde-containing products that violate CARB formaldehyde

8    emission standards.

9        51.    Based upon Lumber Liquidators' misrepresentations and omissions, Plaintiff

10   reasonably assumed that the laminate flooring he purchased complied with all necessary standards

11   and regulations and was safe.

12       52.    Plaintiff had the laminate flooring installed throughout his home, relying on the

13   knowledge and experience of Lumber Liquidators to sell a product in compliance with all

14   applicable local, state, and federal laws and regulations and any applicable environmental

15   regulations.

16       53.    As a result of the representations and omissions of Lumber Liquidators, Plaintiff

17   had Lumber Liquidators' Chinese-manufactured laminate flooring installed on approximately 95%

18   of the flooring surfaces of his home, guaranteeing constant exposure to the environmentally unsafe

19   material for not only himself, but also his wife and child.

20       54.    Samples examined by independent testing facilities revealed that 12mm Golden

21   Teak Kensington laminate flooring contains **367%** and **327%** of the acceptable emission levels

22   for formaldehyde-containing products under CARB regulations.

23       55.    As a result of the material misrepresentations and omissions of Lumber

24   Liquidators, Plaintiff, his wife, and his child have been exposed to dangerous levels of

25   formaldehyde.  In order to avoid further exposure, Plaintiff will have to incur significant costs in

26   removing the laminate flooring from his home.

27       56.    As a result of the misrepresentations and omissions of Lumber Liquidators,

28   Plaintiff has suffered damages.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

**D.**    **Lumber Liquidators Has Misrepresented the True Nature of its Laminate Flooring.**

57.    Lumber Liquidators understands and acknowledges that a consumer's choice in flooring is "a considered, well-researched purchase[.]"[22]

58.    Despite understanding consumers' needs for accurate information in making flooring purchases, Lumber Liquidators has misinformed, and continues to misinform, consumers about its Chinese-manufactured laminate flooring's compliance with CARB standards.  In fact, as alleged herein, Lumber Liquidators has taken, and continues to take, affirmative steps to hide the presence of excess formaldehyde in its products at issue.

59.    Lumber Liquidators' representations that its Chinese-manufactured laminate flooring is safe, high quality, and specifically "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde," were made to induce, were likely to induce, and did induce Plaintiff's and Class members' purchase of the laminate flooring.

60.    The representations made by Lumber Liquidators were false and misleading, and Lumber Liquidators knew, or at a minimum through the exercise of reasonable diligence, should have known, that they were false and misleading at the time they were made.

61.    In conjunction with each sale and through various forms of media, including but not limited to marketing brochures and its website, Lumber Liquidators marketed, advertised, and otherwise warranted that its Chinese-manufactured laminate flooring was fit for the ordinary purpose for which such goods are used, was free from defects, and was compliant with all applicable regulatory standards.

62.    Lumber Liquidators provided an express warranty to Plaintiff and members of the Class.  Among other claims, Lumber Liquidators made express warranties about the quality and fitness of its Chinese-manufactured laminate flooring.

---

[22] Lumber Liquidators Form 10-K for the year ended December 31, 2014, p. 5, http://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=10099135&type=HTML&symbol=LL&companyName=Lumber+Liquidators+Holdings&formType=10-K&dateFiled=2015-02-25.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

63.     For example, Lumber Liquidators states on its website, *inter alia*, that it complies with CARB standards.[23]  Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."  Additionally, Lumber Liquidators warrants on the label of its Chinese-manufactured laminate flooring, including the laminate flooring purchased by Plaintiff, that the product <u>meets or exceeds</u> CARB standards.

64.     Lumber Liquidators continues to represent and warrant that its Chinese-manufactured laminate flooring complies with applicable CARB standards, when in fact, it does not.

65.     In light of the false representations Lumber Liquidators has made regarding formaldehyde in its Chinese-manufactured laminate flooring and the consequent health risks to Plaintiff and the Class, Plaintiff and the Class would be reasonably justified in incurring the costs of replacing the laminate flooring at issue rather than continuing to risk their health and safety by allowing it to remain in their homes and property.



---

[23] http://www.lumberliquidators.com/sustainability/health-and-safety/ (last visited March 9, 2015).

**RULE 9(b) ALLEGATIONS**

66.     Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity in this Complaint:

67.     WHO:  Defendant Lumber Liquidators made material misrepresentations and failed to disclose material facts regarding, *inter alia*, the safety, characteristics, composition, and quality of its Chinese-manufactured laminate flooring.

68.     WHAT:  Lumber Liquidators made material misrepresentations regarding the safety, characteristics, composition, and quality of its Chinese-manufactured laminate flooring and specifically misrepresented, concealed, and omitted facts regarding the compliance of the laminate flooring with CARB standards for formaldehyde emissions.  These misrepresentations, concealments, and omissions were material because a reasonable consumer would not have purchased Lumber Liquidators' Chinese-manufactured laminate flooring had he/she known that it did not comply with CARB or other applicable legal standards and contained excess levels of formaldehyde that posed serious health risks.

69.     WHEN:  Lumber Liquidators made the material misrepresentations, concealments, and omissions detailed herein continuously during the Class Period.

70.     WHERE:  Lumber Liquidators' material misrepresentations, concealments, and omissions were made, *inter alia*, on the label of its Chinese-manufactured laminate flooring, in various forms of print and electronic advertising, and by representatives and employees of the company in Lumber Liquidators' retail stores.

71.     HOW:  Lumber Liquidators made material and uniform misrepresentations, concealments, and omissions regarding the safety, characteristics, composition, and quality of its Chinese-manufactured laminate flooring through written and oral statements in its advertising and labeling of the laminate flooring and at its retail locations.

72.     WHY:  Lumber Liquidators made the material misrepresentations, concealments, and omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   consumers to purchase its Chinese-manufactured laminate flooring.  Lumber Liquidators was able

2   to profit an additional 10-15% by manufacturing and falsely labeling its Chinese-manufactured

3   laminate flooring that contained higher than allowed levels of formaldehyde.

### CLASS ACTION ALLEGATIONS

5   73.     Plaintiff brings this action individually and as a class action pursuant to Federal

6   Rule of Civil Procedure 23 on behalf of the following Class:

> All individuals residing in the State of California who purchased one
> or more laminate flooring products from Lumber Liquidators,
> manufactured in China and advertised as meeting CARB standards,
> for personal use during the four years preceding the filing of this
> Complaint.

10   74.     Plaintiff reserves the right to amend the Class definition prior to certification.

11   75.     Excluded from the Class are Lumber Liquidators, any of its parent companies,

12   subsidiaries, and affiliates, any co-conspirators, and any judges or justices presiding over this

13   action and members of their families.

14   76.     This action is brought and may properly be maintained as a class action pursuant to

15   Federal Rule of Civil Procedure 23.  This action satisfies the numerosity, typicality, adequacy,

16   predominance and superiority requirements of those provisions.

17   77.     The Class is composed of thousands of persons geographically dispersed

18   throughout the State of California, the joinder of whom in one action is impractical. Furthermore,

19   the Class is ascertainable and identifiable from Lumber Liquidators' sales records of laminate

20   flooring manufactured in China and sold in California.

21   78.     The critical question of law and fact common to the Class that will materially

22   advance the litigation is whether Lumber Liquidators' laminate flooring manufactured in China

23   and sold in California was in violation of CARB standards, contrary to the expectations imparted

24   by Lumber Liquidators through its representations, concealments, and/or omissions.

25   79.     Moreover, other questions of law and fact common to the Class exist as to all

26   members of the Class and predominate over any questions affecting only individual members of

27   the Class.  These common legal and factual questions, which do not vary from Class member to

28   Class member, and which may be determined without reference to the individual circumstances of

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

any Class member include, but are not limited to, the following:

    a.      Whether Lumber Liquidators knew or should have known its Chinese-manufactured laminate flooring sold in California was in violation of CARB standards;

    b.      Whether Lumber Liquidators concealed or omitted facts regarding the compliance of its Chinese-manufactured laminate flooring with CARB standards;

    c.      Whether Lumber Liquidators' concealments or omissions of such facts were material to reasonable consumers;

    d.      Whether Lumber Liquidators made false representations regarding its Chinese-manufactured laminate flooring;

    e.      Whether any misrepresentations made by Lumber Liquidators regarding its Chinese-manufactured laminate flooring were made knowingly and/or intentionally;

    f.      Whether Lumber Liquidators breached express and/or implied warranties relating to its Chinese-manufactured laminate flooring;

    g.      Whether Lumber Liquidators engaged in unfair, unlawful, and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL");

    h.      Whether Lumber Liquidators engaged in conduct that violates the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA");

    i.      Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the nature of such damages;

    j.      Whether Plaintiff and the Class are entitled to punitive damages;

    k.      Whether Plaintiff and the Class are entitled to restitutionary relief; and

    l.      Whether Plaintiff and the Class are entitled to injunctive relief.

80.      Plaintiff's claims are typical of the claims of each member of the Class, as all such claims arise out of Lumber Liquidators' conduct in representing the compliance of its Chinese-manufactured laminate flooring with applicable CARB standards.  Plaintiff and each member of the Class have been injured by the same wrongful conduct and their claims are based on the same legal theories.

81.      Plaintiff will fairly and adequately protect the interests of the members of the Class

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, *inter alia*, fraud, breach of warranties, and product liability.

82. This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

83. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

84. Individual actions by Class members would establish incompatible standards of conduct for Lumber Liquidators.

85. Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole, as requested herein.

86. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff and the Class seek reasonable attorneys' fees as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

## COUNT I

## FRAUD AND DECEIT

## (Cal. Civ. Code § 1710)

87.     Plaintiff incorporates by reference each of the above paragraphs as though fully set forth herein.

88.     Lumber Liquidators knowingly and intentionally misrepresented, concealed, and/or omitted from consumers material facts regarding the safety, characteristics, composition, and quality of its Chinese-manufactured laminate flooring, as alleged herein.

89.     Lumber Liquidators had a duty to disclose to Plaintiff and members of the Class the actual safety, characteristics, composition, and quality of its Chinese-manufactured laminate flooring and its violation of CARB standards.

90.     Lumber Liquidators' misrepresentations, concealments, and/or omissions were material and were made on a uniform and classwide basis.  As a direct and proximate result of these misrepresentations, concealments, and/or omissions, Plaintiff and members of the Class have been damaged, as alleged herein.

91.     Plaintiff and members of the Class reasonably and actually relied on Lumber Liquidators' misrepresentations, concealments, and/or omissions.  Such reliance may also be imputed based upon the materiality of Lumber Liquidators' wrongful conduct.

92.     As alleged above, Plaintiff relied on Lumber Liquidators' representations and omissions that its laminate flooring was high quality, within CARB and all other applicable legal standards, and not hazardous to human health and safety before purchasing his laminate flooring from Lumber Liquidators.  Similarly, Class Members reasonably relied on Lumber Liquidators' representations and omissions that its laminate flooring was high quality, within CARB and all other applicable legal standards, and not hazardous to human health and safety before purchasing their laminate flooring from Lumber Liquidators.

93.     Based on such reliance, Plaintiff and members of the Class purchased Lumber Liquidators' Chinese-manufactured laminate flooring and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

94.     Had Plaintiff and members of the Class been aware of the true nature of Lumber Liquidators' business practices—*i.e.*, that Lumber Liquidators' Chinese-manufactured laminate flooring did not comply with CARB standards and contained levels of formaldehyde that posed serious health risks to consumers—they would not have purchased laminate flooring from Lumber Liquidators.

95.     As alleged herein, Lumber Liquidators knew that its laminate flooring manufactured in China exceeded legal standards for formaldehyde emissions, yet continued to sell the laminate flooring to California consumers, aware of the serious health risks it posed.  Lumber Liquidators profited an additional 10-15% by selling this dangerous and defective laminate flooring to California consumers.  Lumber Liquidators' acts and misconduct, as alleged herein, were done with malice, oppression, and intent to defraud, entitling Plaintiff and members of the Class to an award of punitive damages to the extent allowed by law.

96.     Plaintiff and members of the Class are not seeking damages arising out of personal injuries.

## COUNT II

### NEGLIGENT MISREPRESENTATION

97.     Plaintiff incorporates by reference each of the above paragraphs as though fully set forth herein.

98.     During the Class Period, Lumber Liquidators made uniform representations to California consumers regarding the quality of its Chinese-manufactured laminate flooring and its compliance with CARB standards, knowing that such information was material to reasonable consumers' purchasing decisions.

99.     Lumber Liquidators' representations regarding the quality of its Chinese-manufactured laminate flooring and its compliance with CARB standards were false because its laminate flooring did not comply with CARB standards and contained excess levels of formaldehyde that posed serious health risks to consumers.

100.    When Lumber Liquidators made these representations and omissions, it had no reasonable grounds for believing them to be true.  Nonetheless, Lumber Liquidators made these

1  material representations and omissions in order to induce Plaintiff and the Class to act in reliance

2  thereon and buy Lumber Liquidators' Chinese-manufactured laminate flooring, or with the

3  expectation that they would act accordingly.  Plaintiff and each member of the Class reasonably

4  relied on these negligent representations and omissions in choosing to purchase Lumber

5  Liquidators' Chinese-manufactured laminate flooring.

6      101.    At the time Lumber Liquidators made the representations and omissions discussed

7  above, Plaintiff and members of the Class were ignorant of the true facts.  Had they known the

8  true facts, Plaintiff and members of the Class would not have purchased Lumber Liquidators'

9  Chinese-manufactured laminate flooring.

10     102.    As a direct and proximate result of Lumber Liquidators' negligent conduct,

11 Plaintiff and members of the Class have been damaged in an amount to be proven at trial.

12                                    **COUNT III**

13                        **BREACH OF EXPRESS WARRANTY**

14     103.    Plaintiff incorporates by reference each of the above paragraphs as though fully set

15 forth herein.

16     104.    In conjunction with the sale of its Chinese-manufactured laminate flooring, Lumber

17 Liquidators warranted that its laminate flooring complied with CARB standards and all applicable

18 laws and regulations, which formed the basis of express warranties.  These warranties appeared on

19 the Chinese-manufactured laminate flooring sold by Lumber Liquidators, as well as on its website,

20 promotional materials, product invoices, and instruction materials.

21     105.    Lumber Liquidators breached its express warranties because, as set forth in detail

22 above, it failed to provide customers with a product that met the applicable CARB standards for

23 formaldehyde-containing products.

24     106.    As a direct and proximate result of Lumber Liquidators' breach of warranty,

25 Plaintiff and members of the Class have suffered damages in an amount to be determined at trial.

26     107.    Plaintiff provided notice of Lumber Liquidators' breach of express warranty by

27 mailing a notice letter on March 13, 2015.

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

862520.3

CLASS ACTION COMPLAINT

1

**COUNT IV**

2

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

3       108.    Plaintiff incorporates by reference each of the above paragraphs as though fully set

4  forth herein.

5       109.    An implied warranty of merchantability arises automatically when the product is a

6  "good" and the seller is a merchant in the business of furnishing the product to consumers.  The

7  laminate flooring at issue here is a good and Lumber Liquidators is a merchant in the business of

8  selling such goods to consumers.  Accordingly, all of Lumber Liquidators' Chinese-manufactured

9  laminate flooring comes within the implied warranty of merchantability.

10      110.    An implied warranty of merchantability provides that the product is of

11  merchantable quality and fit for its ordinary and intended use.

12      111.    Lumber Liquidators breached the aforementioned implied warranty of

13  merchantability because its Chinese-manufactured laminate flooring was not of merchantable

14  quality or fit for its ordinary and intended use and because it was not compliant with industry

15  standards at the time of its sale that resulted in, and continues to result in, formaldehyde emissions

16  in violation of CARB standards.

17      112.    Plaintiff and members of the Class could not have known about the defects in

18  Lumber Liquidators' Chinese-manufactured laminate flooring and relied on the skill and judgment

19  of Lumber Liquidators in purchasing and using the laminate flooring.

20      113.    As a direct and proximate result of Lumber Liquidators' breach of the implied

21  warranty of merchantability, Plaintiff and members of the Class have suffered damages in an

22  amount to be determined at trial.

23      114.    Plaintiff provided notice of Lumber Liquidators' breach of implied warranty by

24  mailing a notice letter on March 13, 2015.

25

**COUNT V**

26

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

27

**(15 U.S.C. § 2301, *et seq.*)**

28      115.    Plaintiff incorporates by reference each of the above paragraphs as though fully set

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

forth herein.

116. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA") provides a private right of action to purchasers of consumer products against retailers who*, inter alia*, fail to comply with the terms of a written warranty, express warranty, and/or implied warranty. As demonstrated above, Lumber Liquidators has failed to comply with the terms of its warranties—written, express, and implied—with regard to its Chinese-manufactured laminate flooring.

117. The laminate flooring at issue in this case is a "consumer product" as defined in 15 U.S.C. § 2301(1).

118. Plaintiff and members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

119. Lumber Liquidators is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

120. Lumber Liquidators provided Plaintiff and the Class with a "written warranty" within the meaning of 15 U.S.C. § 2301(6)—namely that its Chinese-manufactured laminate flooring was complaint with CARB standards.

121. There was also an "implied warranty" within the meaning of 15 U.S.C. § 2301(7) that the Chinese-manufactured laminate flooring sold by Lumber Liquidators was merchantable and fit for its ordinary and intended use.

122. Lumber Liquidators violated the MMWA by failing to comply with its written warranty and the implied warranty made to Plaintiff and the Class, as outlined herein and throughout this Complaint.

123. As a direct and proximate result of Lumber Liquidators' breach of its express, written and implied warranties, Plaintiffs and members of the Class have been injured and are entitled to damages and injunctive relief, including recall, replacement, restitution, rescission or other relief as appropriate.

124. Plaintiff provided notice of Lumber Liquidators' breach of warranty under the MMWA by mailing a notice letter on March 13, 2015.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

## COUNT VI

### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### (Cal. Civ. Code § 1750, *et seq.*)

125.     Plaintiff incorporates by reference each of the above paragraphs as though fully set forth herein.

126.     Plaintiffs and members of the Class are "consumers" as defined by Civil Code § 1761(d).

127.     Lumber Liquidators is a "person" as defined by Civil Code § 1761(c).

128.     Laminate flooring constitutes "goods" as defined by Civil Code § 1761(a).

129.     Plaintiff and the Class members' purchases of Chinese-manufactured laminate flooring from Lumber Liquidators are "transactions" as defined by Civil Code § 1761(e).

130.     Lumber Liquidators has engaged in and continues to engage in business practices in violation of Civil Code § 1750, *et seq.* (the CLRA) by misrepresenting that its laminate flooring made in China complied with CARB standards, and concealing or omitting that its laminate flooring contained excess levels of formaldehyde that posed serious health risks to consumers. Lumber Liquidators has misrepresented, concealed, and/or omitted this information knowing that such information is material to a reasonable consumer's purchasing decision and thereby misrepresented the safety, characteristics, composition, and quality of its laminate flooring made in China.  Lumber Liquidators' business practices are unfair and deceptive and should be enjoined.

131.     Lumber Liquidators has engaged in unfair and deceptive acts or practices intended to result in the sale of its laminate flooring made in China in violation of California Civil Code § 1770.  As alleged above and throughout this Complaint, Lumber Liquidators knew that its misrepresentations, concealments, and/or omissions of material fact concerning its laminate flooring made in China were material and likely to mislead the public.

132.     Lumber Liquidators' deceptive acts or practices were specifically designed to induce Plaintiff and Class members to purchase or otherwise acquire its laminate flooring made in China.

133.     Lumber Liquidators' conduct alleged herein violates the CLRA, including but not

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1    limited to the following provisions:

2         a.    Misrepresenting the source, sponsorship, approval, or certification of goods

3    or services in violation of Cal. Civ. Code § 1770(a)(2);

4         b.    Representing that goods or services have sponsorship, approval,

5    characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal.

6    Civ. Code § 1770(a)(5);

7         c.    Representing that goods or services are of a particular standard, quality, or

8    grade if they are of another in violation of Cal. Civ. Code § 1770(a)(7);

9         d.    Advertising goods or services with intent not to sell them as advertised in

10   violation of Cal. Civ. Code § 1770(a)(9); and/or

11        e.    Representing that the subject of a transaction has been supplied in

12   accordance with a previous representation when it has not.

13   134.   As a direct and proximate result of Lumber Liquidators' conduct, as set forth

14   herein, Lumber Liquidators has received ill-gotten gains and/or profits. Therefore, Lumber

15   Liquidators has been unjustly enriched.

16   135.   Plaintiff, on behalf of himself and the Class, seeks a permanent injunction against

17   Lumber Liquidators to enjoin it from continuing to misrepresent or omit material facts about the

18   formaldehyde content of its Chinese-manufactured laminate flooring, and force Lumber

19   Liquidators to replace all laminate flooring in violation of California's CARB standards pursuant

20   to Civil Code § 1780(d). There is no other adequate remedy at law, and Plaintiff and the Class

21   will suffer irreparable harm unless Lumber Liquidators' conduct is enjoined.

22   136.   This cause of action does not, at this point, seek monetary or punitive damages, but

23   is confined solely to injunctive relief. On March 13, 2015, counsel for Plaintiff and the Class

24   provided Lumber Liquidators with written notice that its conduct is in violation of the CLRA.

25   Plaintiff and the Class will amend their Complaint after thirty (30) days of having provided this

26   notice to seek damages under the CLRA. *See* Cal. Civ. Code § 1782(d).

27   137.   Regardless of an award of damages, Plaintiff also separately seeks and is entitled,

28   pursuant to section 1780(d) of the CLRA, to an order for the equitable relief described above, as

1  well as costs, attorneys' fees, and any other relief which the Court deems proper.

2  **COUNT VII**

3  **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

4  **(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

5  138.    Plaintiff incorporates by reference each of the above paragraphs as though fully set

6  forth herein.

7  139.    Lumber Liquidators' conduct as described herein constitutes unfair competition

8  within the meaning of California Business and Professions Code § 17200, *et seq.* (the UCL)

9  insofar as the UCL prohibits "any unlawful, unfair or fraudulent business act or practice" or

10  "unfair, deceptive, untrue or misleading advertising."

11  140.    Lumber Liquidators' misrepresentations, concealments, and/or omissions of

12  material fact as alleged herein constitute unlawful, unfair, and fraudulent business practices

13  because they deceived Plaintiff and members of the Class into believing that Lumber Liquidators'

14  Chinese-manufactured laminate flooring complied with CARB standards and did not pose any

15  hazards or health risks to consumers.

16  141.    Lumber Liquidators engaged in and continues to engage in acts or practices that

17  violate the UCL, including but not limited to the following:

18          a.      Selling and distributing laminate flooring in California that is not CARB

19  complaint;

20          b.      Failing to warn Plaintiff and the Class of any health hazards stemming from

21  the purchase of laminate flooring in violation of CARB standards, as required by California Health

22  and Safety Code §25249.6; and/or

23          c.      Making or authorizing written and oral statements about the safety,

24  characteristics, composition, and quality of its Chinese-manufactured laminate flooring which

25  were untrue or misleading and which were known, or in the existence of reasonable care should

26  have been known, to be untrue or misleading, as more fully described above and incorporated

27  herein by this reference.

28  142.    Lumber Liquidators' conduct constitutes an "unlawful" business practice within the

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  meaning of the UCL because it constitutes actionable fraud under California law and violates the

2  MMWA and CLRA, as well as state express and implied warranties.

3       143.    Lumber Liquidators' conduct constitutes an "unfair" business practice within the

4  meaning of the UCL because it offends established public policy and/or is immoral, unethical,

5  oppressive, unscrupulous, and substantially injurious to consumers. Reasonable consumers

6  purchased laminate flooring from Lumber Liquidators believing it was safe and in compliance

7  with CARB and any other relevant regulations. They were not aware and could not have

8  reasonably been aware that Lumber Liquidators' Chinese-manufactured laminate flooring

9  contained excess levels of formaldehyde. Lumber Liquidators' conduct has no utility or

10 countervailing benefit and consumers could not have reasonably avoided their injury.

11      144.    Lumber Liquidators' conduct constitutes a "fraudulent" business practice within the

12 meaning of the UCL because its misrepresentations, concealments, and/or omissions of material

13 fact alleged herein are likely to, and did, deceive members of the public, including Plaintiff and

14 Class members.

15      145.    As a direct and proximate result of Lumber Liquidators' wrongful business

16 practices in violation of the UCL, Plaintiffs and Class members have suffered injury in fact and

17 lost money or property as a result of purchasing Lumber Liquidators' Chinese-manufactured

18 laminate flooring. Plaintiffs and Class members would not have purchased or paid as much for

19 Lumber Liquidators' Chinese-manufactured laminate flooring had they known the true facts about

20 its formaldehyde emission levels.

21      146.    Lumber Liquidators' wrongful business practices constitute a continuing course of

22 conduct of unfair competition since Lumber Liquidators is marketing and selling its Chinese-

23 manufactured laminate flooring in a manner likely to deceive the public.

24      147.    Pursuant to California Business and Professions Code § 17203, Plaintiffs and the

25 Class seek an order of this Court enjoining Lumber Liquidators from continuing to engage in

26 unlawful, unfair, and fraudulent business practices and any other act prohibited by law, including

27 those set forth in this Complaint. Plaintiffs and the Class also seek an order requiring Lumber

28 Liquidators to make full restitution of all moneys it wrongfully obtained from Plaintiffs and the

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   Class.

2   148.   Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and the Class

3   seek reasonable attorneys' fees as this lawsuit seeks the enforcement of an important right

4   affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

5   **COUNT VIII**

6   **DECLARATORY RELIEF**

7   149.   Plaintiff incorporates by reference each of the above paragraphs as though fully set

8   forth herein.

9   150.   Plaintiff asserts that Lumber Liquidators' Chinese-manufactured laminate flooring

10  sold in California does not comply with CARB standards for formaldehyde emissions.

11  151.   On information and belief, Lumber Liquidators asserts that its Chinese-

12  manufactured laminate flooring sold in California does comply with CARB standards for

13  formaldehyde emissions.

14  152.   By reason of the foregoing, there exists a present controversy between Plaintiff and

15  Lumber Liquidators with respect to which the Court should enter a declaratory judgment

16  determining whether Lumber Liquidators' Chinese-manufactured laminate flooring sold in

17  California complies with CARB standards for formaldehyde emissions.  Such a judgment is

18  necessary and appropriate so that each party may know its rights and duties and act in accordance

19  with the same.

20  **PRAYER FOR RELIEF**

21  WHEREFORE, Plaintiff and members of the Class pray for judgment and relief against

22  Lumber Liquidators as follows:

23  1.   For an order certifying the Class and appointing Plaintiff and his counsel to

24  represent the Class;

25  2.   For compensatory damages suffered by Plaintiff and members of the Class;

26  3.   For punitive damages in an amount appropriate to punish Lumber Liquidators and

27  make an example of Lumber Liquidators in order to deter others from similar conduct;

28  4.   For restitution to Plaintiff and members of the Classes of all monies wrongfully

1   obtained by Lumber Liquidators;

2       5.      For an injunction ordering Lumber Liquidators to cease and desist from engaging

3   in the unlawful, unfair, and fraudulent practices alleged in this Complaint;

4       6.      For Plaintiffs' reasonable attorneys' fees;

5       7.      For Plaintiffs' costs of suit herein;

6       8.      For pre-judgment and post-judgment interest at the maximum allowable rate on any

7   amounts awarded; and

8       9.      For any and all such other and further relief that this Court may deem just and

9   proper.

10

11  DATED: March 17, 2015                    **PEARSON. SIMON & WARSHAW. LLP**

12

13                                           By:  _____*/s/ Daniel L. Warshaw*_____
                                                        DANIEL L. WARSHAW

14
                                             DANIEL L. WARSHAW (Bar No. 185365)
15                                           ALEXANDER R. SAFYAN (Bar No. 277856)
                                             **PEARSON, SIMON & WARSHAW, LLP**
16                                           15165 Ventura Boulevard, Suite 400
                                             Sherman Oaks, California 91403
17                                           Telephone:  (818) 788-8300
                                             Facsimile:   (818) 788-8104
18                                           dwarshaw@pswlaw.com
                                             asafyan@pswlaw.com
19
                                             BRUCE L. SIMON (Bar No. 96241)
20                                           **PEARSON, SIMON & WARSHAW, LLP**
                                             44 Montgomery Street, Suite 2450
21                                           San Francisco, California 94104
                                             Telephone:  (415) 433-9000
22                                           Facsimile:   (415) 433-9008
                                             bsimon@pswlaw.com
23
                                             AIMEE H. WAGSTAFF (Bar No. 278480)
24                                           **ANDRUS WAGSTAFF, PC**
                                             7171 West Alaska Drive
25                                           Lakewood, Colorado 80226
                                             Telephone:     (720) 255-7623
26                                           aimee.wagstaff@andruswagstaff.com

27                                           Attorneys for Plaintiff Joseph A. Del Braccio,
                                             individually and on behalf of all others similarly
28                                           situated

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial on the claims so triable.

DATED: March 17, 2015          **PEARSON. SIMON & WARSHAW. LLP**


By:          */s/ Daniel L. Warshaw*
               DANIEL L. WARSHAW

DANIEL L. WARSHAW (Bar No. 185365)
ALEXANDER R. SAFYAN (Bar No. 277856)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone:  (818) 788-8300
Facsimile:  (818) 788-8104
dwarshaw@pswlaw.com
asafyan@pswlaw.com

BRUCE L. SIMON (Bar No. 96241)
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com

AIMEE H. WAGSTAFF (Bar No. 278480)
***ANDRUS WAGSTAFF, PC***
7171 West Alaska Drive
Lakewood, Colorado 80226
Telephone:     (720) 255-7623
aimee.wagstaff@andruswagstaff.com

Attorneys for Plaintiff Joseph A. Del Braccio,
individually and on behalf of all others similarly
situated